UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MONSERRATE B., § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> COMMISSIONER OF SOCIAL SECURITY, § <br> § <br> Defendant. § | Case # 1:20-CV-700-DB <br><br> MEMORANDUM DECISION <br> AND ORDER |

## INTRODUCTION

Plaintiff Monserrate B. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") that denied her application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 14).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 11, 12. Plaintiff also filed a reply. *See* ECF No. 13. For the reasons set forth below, the Commissioner's motion for judgment on the pleadings (ECF No. 12) is **DENIED**, and Plaintiff's motion for judgment on the pleadings (ECF No. 11) is **GRANTED IN PART**, and this matter is **REMANDED** to the Commissioner for further administrative proceedings as set forth below.

## BACKGROUND

On November 9, 2016, Plaintiff protectively filed an application for SSI, alleging disability beginning January 1, 2008 (the disability onset date), due to tendonitis, asthma, human immunodeficiency virus ("HIV"), migraines, arthritis, and anxiety. Transcript ("Tr.") 177-181,

196. Plaintiff's claim was denied initially on March 29, 2017, after which she requested an administrative hearing. Tr. 99-101. On April 26, 2019, Administrative Law Judge Susan Smith (the "ALJ") conducted a video hearing from Alexandria, Virginia. Tr. 10, 29-61. Plaintiff appeared and testified from Buffalo, New York, and was represented by Joann Lewandowski, a non-attorney representative. Tr. 10. Kim Williford, an impartial vocational expert ("VE"), also appeared and testified at the hearing. *Id.*

The ALJ issued an unfavorable decision on May 10, 2019, finding that Plaintiff was not disabled. Tr. 10-20. On April 6, 2020, the Appeals Council denied Plaintiff's request for further review. Tr. 1-4. The ALJ's May 10, 2019 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## **LEGAL STANDARD**

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

## II. The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the

Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in her May 10, 2019 decision:

1. The claimant has not engaged in substantial gainful activity since November 9, 2016, the application date (20 CFR 416.971 *et seq.*);

2. The claimant has the following severe impairments: HIV positive, arthritis, eczema, obesity, mood disorder, post-traumatic stress disorder ("PTSD"), and substance abuse (20 CFR (20 CFR 416.920(c));

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926);

4. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)[1] except she can occasionally climb ramps or stairs, stoop, kneel, balance, crouch and crawl. She can never climb ladders, ropes or scaffolds. [Sh]e must avoid concentrated exposure to hazards including dangerous moving machinery, uneven terrain, and unprotected heights. She must avoid concentrated exposure to environmental irritants such as dusts, fumes, odors, gases, poor ventilation, and extreme hot and cold temperatures. She is limited [to] simple, routine, repetitive tasks. She is limited to occasional contact with coworkers, supervisors, and the public;

5. The claimant has no past relevant work (20 CFR 416.965);

6. The claimant was born on June 20,1973 and was 43 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963);

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964);

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968);

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a);

10. The claimant has not been under a disability, as defined in the Social Security Act, since November 9, 2016, the date the application was filed (20 CFR 416.920(g)).

Tr. 10-20.

Accordingly, the ALJ determined that, based on the application for supplemental security benefits filed on November 9, 2016, the claimant is not disabled under section 1614(a)(3)(A) of the Act. Tr. 20.

## **ANALYSIS**

Plaintiff asserts two points of error. Plaintiff first argues that the ALJ failed to reconcile Plaintiff's physical RFC with the opinion of consultative internal medicine examiner Samuel Balderman, M.D. ("Dr. Balderman"), to which the ALJ afforded great weight. *See* ECF No. 11-1 at 1, 14-19. Plaintiff next argues that the ALJ's mental RFC determination was not supported by substantial evidence because the ALJ failed to explain why she rejected opined stress limitations from consultative psychologist Janine Ippolito, Psy.D. ("Dr. Ippolito"), and failed to conduct an individualized stress analysis. *See id*. at 19-22.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The

Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the entire record, the Court finds that the ALJ appropriately assessed the evidence of record with respect to Plaintiff's physical limitations, including the medical opinion evidence, treatment notes, x-ray reports, electromyography and nerve conduction studies, and Plaintiff's activities, and reasonably concluded that Plaintiff retained the ability to perform light work with additional postural and environmental limitations as described in the RFC. Accordingly, the Court finds that the ALJ's physical RFC determination was supported by substantial evidence, and Plaintiff's first point of error fails. However, for the reasons discussed below, the Court finds that Plaintiff's arguments challenging the ALJ's mental RFC determination have merit.

A claimant's RFC is the most she can still do despite her limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Furthermore, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Plaintiff first takes issue with the ALJ's assessment of Dr. Balderman's consultative opinion. On February 9, 2017, Plaintiff presented to Dr. Balderman for a consultative physical evaluation. Tr. 335-38. Plaintiff complained of tendonitis, asthma, HIV infection, migraine headaches, and arthritis. Tr. 335. Plaintiff stated she took no specific medications for arthritis. Tr.

335. She also stated she had been HIV positive for 20 years. *Id*. Plaintiff further stated she had asthma for most of her adult life, but she had no recent emergency room visits for her asthma. *Id*. Plaintiff also stated she had constant arm and hand pain, moderate in intensity, and that medications were helpful in relieving the pain. Tr. 335.

A physical examination showed Plaintiff had a normal gait and could walk on her heels and toes without difficulty. Tr. 336. Plaintiff did not use an assistive device, and she needed no help in changing for the examination or getting on and off the examination table. *Id*. Plaintiff had full flexion, extension, and rotary movement bilaterally in her cervical and lumbar spine, and a negative straight leg raising test bilaterally. Tr. 337. Dr. Balderman found Plaintiff had a full range of motion in her elbows, forearms, wrists, hips, knees, and ankles. *Id*. Plaintiff also had normal strength in her upper and lower extremities. *Id*. In addition, Dr. Balderman found Plaintiff had intact hand and finger dexterity and slightly diminished grip strength. *Id*. Dr. Balderman diagnosed Plaintiff with status post bilateral carpal tunnel and ulnar nerve decompression; inflammation of the shoulders; asthma; HIV infection; and migraine headaches. Tr. 338. He opined that Plaintiff had mild limitation in repetitive use of the hands and moderate limitation in reaching, pushing, and pulling. *Id*.

Plaintiff argues that the ALJ erred by giving great weight to Dr. Balderman's opinion, but then not including any reaching or handling limitations in the RFC finding. *See* ECF No. 11-1 at 17. However, Dr. Balderman assessed only a mild limitation in repetitive use of her hands, which would not prevent her from performing light work. Although Dr. Balderman found Plaintiff had a moderate limitation in reaching, pushing, and pulling, the Second Circuit has noted that moderate limitations do not mandate a finding of disability. *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) ("None of the clinicians who examined [the claimant] indicated that she had anything more

8

than moderate limitations in her work-related functioning, and most reported less severe limitations); *Nelson v. Colvin*, 12–CV–1810(JS); 2014 WL 1342964, at *12 (E.D.N.Y. March 31, 2014) (ALJ's finding that plaintiff could perform light work is supported by the doctor's opinion that the claimant had mild to moderate limitation for sitting, standing, and walking) (citing *Lewis v. Colvin*, 548 F. App'x 675, 678 (2d Cir. 2013) (summary order).

Here, the ALJ considered the record as a whole and appropriately accounted for the physical and mental limitations that were supported by the record overall. Tr. 15-18. For example, the ALJ relied on the physical examination findings showing that Plaintiff had normal strength in her upper and lower extremities; x-rays of Plaintiff's wrists showing only mild osteoarthritis; normal nerve conduction and electromyography studies of her upper extremities; and Plaintiff's activities, including caring for her elderly father who had cancer, and caring for her grandchildren. Tr. 287, 355, 363-365, 429, 431, 439, 463, 557, 559, 564. Furthermore, as noted above, the ALJ is responsible for assessing the claimant's RFC. *See* 20 C.F.R. § 417.927(d)(2) ("Although we consider opinions from medical sources on issues such as . . . your residual functional capacity . . . the final responsibility for deciding these issues is reserved to the Commissioner."); *see also Matta*, 508 Fed App'x at 56 (2d Cir. 2013). Therefore, the ALJ was not obligated to include limitations in the RFC with respect to reaching and handling based on Dr. Balderman's opinion. Tr. 15.

Plaintiff also argues that, as to overhead reaching, the ALJ's RFC finding failed to reconcile discrepancies between the VE's testimony and the Dictionary of Occupational Titles ("DOT"). *See* ECF No. 11-1 at 19. Plaintiff's reliance on *Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87, 88 (2d Cir. 2019), to support her argument is misplaced. In *Lockwood*, the VE testified that a claimant with a restriction on overhead reaching could perform the jobs at issue, but the

DOT stated that the jobs at issue required "reaching," and a policy statement from Social Security defined reaching as "extending the hands and arms in any direction." *Lockwood*, 914 F.3d at 92. The instant case is factually distinguishable from *Lockwood*, as *Lockwood* involved an RFC excluding all overhead reaching, whereas here, the ALJ's RFC did not include reaching limitations. Tr. 15. Therefore, there was no conflict between the VE testimony and the DOT.

Moreover, as noted above, an opinion of mild-to-moderate limitations in physical functioning is consistent with the demands of light work. *See, e.g.*, *April B. v. Saul*, 2019 WL 4736243, *5 (N.D.N.Y. Sept. 27, 2019) ("moderate limitations in standing and walking are consistent with light work"); *Gerry v. Berryhill*, 2019 WL 955157, *3 (E.D.N.Y. Feb. 26, 2019) ("[c]ourts within this Circuit have held that opinions of similar 'mild to moderate limitations' [for standing, walking, climbing, bending, lifting, carrying, and kneeling] support RFC findings that claimants are capable of 'light work'") (collecting cases); *Heidrich v. Berryhill*, 312 F. Supp. 3d 371, 374 n.2 (W.D.N.Y. 2018) ("postural limitations of moderate or lesser severity are generally considered consistent with the demands of light work"); *Gurney v. Colvin*, 2016 WL 805405, *3 (W.D.N.Y. March 2, 2016) (finding that moderate limitations with respect to "repetitive heavy lifting, bending, reaching, pushing, pulling or carrying . . . are frequently found to be consistent with an RFC for a full range of light work") (collecting cases). Accordingly, the ALJ reasonably and properly accounted for Dr. Balderman's opinion of mild limitation in repetitive use of the hands and moderate limitation in reaching, pushing, and pulling by limiting Plaintiff to light work. Tr. 15. Therefore, the Court finds that the ALJ properly assessed Plaintiff's physical limitations, and the ALJ's physical RFC finding was supported by substantial evidence.

With respect to the mental RFC, the ALJ afforded some weight to the opinion of Dr. Ippolito as support for her step four finding that Plaintiff retained the mental capacity to perform

simple, routine, repetitive tasks and have occasional contact with coworkers, supervisors, and the public. Tr. 15. Dr. Ippolito examined Plaintiff on February 17, 2017. Tr. 344-48. On mental status examination, Plaintiff was rocking in her chair and had tense posture; she had anxious affect and neutral mood; impaired attention, concentration, and recent and remote memory skills; and she had somewhat limited general fund of information, fair judgment, and fair to poor insight. Tr. 346-47.

Dr. Ippolito diagnosed Plaintiff with generalized anxiety disorder with panic attacks and found that Plaintiff could follow and understand simple directions and instructions; perform simple tasks independently; maintain a regular schedule; learn new tasks and perform complex tasks independently; and make appropriate decisions without evidence of limitations.. *Id*. Dr. Ippolito also found that Plaintiff had a mild limitation in maintaining attention and concentration; a moderate limitation in learning new tasks; and marked limitations in relating adequately to others and appropriately dealing with stress. Tr. 347. Dr. Ippolito also opined that the evaluation results appeared to be consistent with psychiatric problems that may significantly interfere with Plaintiff's ability to function on a daily basis. *Id*.

Upon review of the ALJ's decision, the Court finds that the ALJ did not properly consider Dr. Ippolito's opined marked limitation in dealing with stress and failed to make a thorough evaluation of Plaintiff's individualized reaction to stress as required. *See* Social Security Ruling ("SSR") 85-15. SSR 85-15 states: "it is not unusual that the mentally impaired have difficulty accommodating to the demands of work and work-like settings," and "[t]he reaction to the demands of work (stress) is highly individualized, and mental illness is characterized by adverse responses to seemingly trivial circumstances." SSR 85-15. As a result, SSR 85-15 recognizes that "[d]etermining whether these [mentally impaired] individuals will be able to adapt to the demands

or 'stress' of the workplace is often extremely difficult," and "requires careful consideration of the assessment of RFC," including whether the individual retains the ability "to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." *Id*.

In considering whether an individual is capable of working despite any difficulties attributable to his or her mental impairments, SSR 85-15 thus "emphasizes the importance of thoroughness in evaluation on an individualized basis," and explains that "[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment." *Id*. "Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job." *Id*. "Any impairment-related limitations created by an individual's response to demands of work, however, must be reflected in the RFC assessment." *Id*. This was not done in this case.

When discussing Dr. Ippolito's opinion, the ALJ only mentioned her assessment of Plaintiff's ability to interact with others, finding Dr. Ippolito's opinion that Plaintiff had a marked limitation with relating adequately with others was "not supported" because Plaintiff could care for her family members and was cooperative. Tr. 15. However, none of these reasons were cited by the ALJ as support for her rejection of Dr. Ippolito's stress limitation. In fact, the ALJ offered no explanation whatsoever. Tr. 15-18.

Because the ALJ failed to address the marked stress limitation and failed to conduct a thorough evaluation in accordance with SSR 85-15's guiding principles emphasizing the individualized nature of the inquiry, the Court finds that remand is warranted for proper evaluation of Plaintiff's mental RFC. *See Kuhaneck v. Comm'r of Soc. Sec.*, 357 F.Supp.3d 241, 248

(W.D.N.Y. 2019) ("The ALJ's failure to explain her assessment of portions of [the] medical opinion prevents the Court from meaningfully reviewing [her] decision, and warrants remand.") (internal citation and quotation marks omitted); *see also Devine v. Saul*, 2020 WL 1649819, at *7 (W.D.N.Y. Apr. 3, 2020) (finding the ALJ by failing to discuss the examiner's opinion that the plaintiff had moderate limitation in dealing with stress, failing to provide an analysis of the stress limitation, and failing to explain where he rejected it or intended to address the limitation in the RFC determination).

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 11) is **GRANTED IN PART**, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 12) is **DENIED**, and this matter is **REMANDED** to the Commissioner for further administrative proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of Court is directed to enter judgment and close this case.

**IT IS SO ORDERED**.

*[signature]*
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE